UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | : | |
|---|---|---|
| **United States of America** | : | Criminal Case No. 18-cr-172-01-SM |
| | : | |
| v. | : | |
| | : | |
| **Jessica Teixeira** | : | |
| | : | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, respectfully submits this memorandum in connection with the sentencing of the defendant, Jessica Teixeira, scheduled for August 7, 2019. The Government recommends that the Court sentence the defendant to a term of imprisonment at the bottom of the guideline range as properly calculated in the Presentence Investigation Report ("PSR"), or 41 months.

**I.    Introduction**

On March 11, 2019, the defendant pleaded guilty to a two-count Superseding Information charging her with one count of Wire Fraud, in violation of 18 U.S.C. § 343, and one count of Money Laundering, in violation of 18 U.S.C. § 1957. As detailed in the PSR, the United States Probation Office calculates defendant's total offense level under the advisory Sentencing Guidelines to be 22,[1] and the defendant falls into Criminal History Category I. PSR ¶¶ 38, 49. Based on these calculations, the defendant faces a guideline sentencing range of 41 to 51 months' incarceration, followed by 1-3 years of supervised release. *Id.* ¶¶ 69, 73.

---

[1] The defendant's sentencing memo references asking the Government to provide documentation supporting the recommended loss amount and restitution figures. That documentation had been provided to the defendant as early discovery in October 2018, and was provided again on Monday, July 29. *See* E-mail to Jeff Levin (attached as Ex. A.)

The Government agrees with the calculations in the PSR, as well as the description of the offense conduct. Under the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully recommends that the Court impose a sentence of 41 months' imprisonment. The Government believes such a sentence is appropriate in light of defendant's offense conduct, history and characteristics, as well as the need for both specific and general deterrence.

## II.  Offense Conduct

The charges here arise out of a false investment scheme, which the defendant used to defraud two victims, Patrick Mulcahy and Peter Morgan, of $246,250 and $50,000, respectively. The defendant met the first victim, Mulcahy, on an online dating website, under the false identity, Avery Sullo. She eventually used that false identity to introduce her true self to Mr. Mulcahy vie e-mail, and they met for dinner on a number of occasions. The defendant used those meals as an opportunity to pitch to Mr. Mulcahy purported high-yield investment opportunities, which turned out to be entirely fictional. The investments, she promised, guaranteed his principal, and had returns ranging from 20-80%. He believed her, and agreed to what she proposed.

As the initial investments came due, the defendant convinced Mr. Mulcahy to "reinvest" by rolling over his original investments and returns into new investments that continued to offer massive, guaranteed returns. As long as he agreed to do so, she could continue to take money from him without having to pay anything out herself. On multiple occasions, the defendant also told Mr. Mulcahy to give her separate checks on the same date, rather than the entire sum in one check. He believed this was because the amounts were going to different investments, to diversify his portfolio.

He ultimately gave her 35 checks, drawn from his personal and business bank accounts, totaling $246,250. By spring 2017, however, Mulcahy had not seen any returns on his investments. When he tried to question the defendant about this, she turned the questions back on him, claiming that he owed her expenses and threatening litigation. She also created false letters from a fictional law firm, "Caldwell, Acronis & Lehman," purporting to document payment of some investment returns. Mulcahy had never received any such payment.

The defendant met the second victim, Peter Morgan, through Mulcahy. Her defrauding of Morgan followed essentially the same pattern as with Mulcahy, except that Morgan balked sooner. Morgan provided the defendant with a total of $50,000 for her purported investments. When the first investment was due, the defendant recommended that he, like Mulcahy, roll the investment over into a new, better deal. When Morgan told her that he would consider reinvesting the return, but that he wanted his principal back, the defendant said she would have to reconsider, and never communicated with him again.

When neither received any payment from the defendant and could not get any communication from her about their investments, the two men sued her in state court. She never responded to the suit, and judgment was entered for Mulcahy and Morgan by default.

### III.     Guideline Calculations

The Government agrees with the PSR that a two-level enhancement applies under U.S.S.G. §2B1.1(b)(2)(A)(iii), because the offense resulted in substantial financial hardship to victim Patrick Mulcahy. Mulcahy's loss, $246,250, constituted a substantial loss of his life savings. U.S.S.G. §2B1.1, cmt. n.4(F)(iii).

The Government also agrees with the PSR that the defendant should not receive credit for acceptance of responsibility, based on her defrauding Serge Golden of $2,500 in a hemp flower

distribution scheme. The Government acknowledges that the defendant was arrested and incarcerated on a bail violation one day after Golden paid the defendant $4,500 for his investment. However, the purported investment with Golden fits the pattern of the scheme in the instant offense – the defendant met Golden on a dating website, she stated that she would act as a middleman for the investment and Golden would receive a large guaranteed return (over 100%), and she requested that he pay her in two checks. Taken with the other offense behavior not part of relevant conduct outlined in the PSR, which confirms the defendant's modus operandi, the defendant's continued criminal activity is proven beyond a preponderance of the evidence.

Therefore, the PSR correctly calculates the offense level as 22.

**IV.     Government Recommendation**

The Government respectfully requests that the Court sentence defendant to 41 months' incarceration, at the bottom of the guideline range. Under *United States v. Booker*, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory. Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" *United States v. Millan-Isaac*, 749 F.3d 57, 66 (1st Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to guide the exercise of the court's discretion." *Millan-Isaac*, 749 F.3d at 66 (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011)). After giving both parties an opportunity to be heard, the district court should then consider all of the factors under 18 U.S.C. § 3553(a) to fashion an appropriate sentence. *See Gall*, 552 U.S. at 49-50.

The Government believes that a sentence of 41 months' incarceration is justified here pursuant to the § 3553(a) factors, given the nature, circumstances, and seriousness of the offense,

the history and characteristics of defendant, the need to protect the public, and the need to deter the defendant and others from similar activity.

The nature and circumstances of the offense are egregious. The defendant shamelessly stole almost $300,000 from the two victims combined. The scheme began in December 2015, well before she lost her job in October 2016; she was not driven to this behavior by economic desperation. Her relationship with Mulcahy was rooted in deception from the start, deriving from her use of a false identity to meet him online. To the extent the scheme was not sophisticated, she took advantage of Mulcahy's own inexperience investing, and used her relationship with Mulcahy to meet and then target Morgan.

Particularly troubling is that, contrary to the defendant's representations, the behavior giving rise to the charges here was not aberrant. Therefore, a significant sentence is required both to protect the public and deter the defendant from further crimes. The Government acknowledges that the defendant does not appear to have engaged in criminal conduct before her late 30s. However, describing the current offenses as aberrant is nonetheless incorrect. First, the defendant's scheme continued for over a year. This was not an error in judgment of a single moment; it was an ongoing course of behavior. *See* U.S.S.G. §5K2.20, Aberrant Behavior, cmt. 2 ("[A] fraud scheme generally would not meet" the requirements for a downward departure based on aberrant behavior "because such a scheme usually requires repetitive acts, rather than a single occurrence or single criminal transaction, and significant planning"); *United States v. Buchanan*, 987 F.Supp. 56, 67 (1st Cir. 1997) (conduct occurring from 1986 through 1990 was not aberrant because it "was not a momentary slip").[2]

---

[2] The Government recognizes that the defendant is asking for a variance, not a departure under U.S.S.G. §5K2.20, and that the Court may vary downward where a departure would be

Second, the conduct described in the portion of the PSR labeled "Offense Behavior Not Part of Relevant Conduct" makes clear that the defendant's defrauding of Mulcahy and Morgan is part of a consistent pattern, if not in her entire life, in this more recent period of her life. Her experience with Serge Golden has already been discussed. On May 16, 2018, the defendant met with a cooperating witness ("CW") and solicited investment funds from the CW in exactly the same manner in which she solicited investment funds from the victims here. By this date, she had broken off contact with Mulcahy and Morgan when they sought repayment, and default judgment had been entered against her in their civil suit. That the defendant felt it was appropriate to promote the same false investment scheme to a new mark at this point, combined with her experience with Golden, suggests that she will continue to follow this pattern in future. *See United States v. Bradstreet*, 135 F.3d 46, 56 (1st Cir. 1998) (conduct is only aberrant where it is "both a marked departure from the past *and* is unlikely to recur" (emphasis in original)).

The Government is also concerned by possible inconsistencies in the defendant's statements to the probation officer and during her psychological evaluation. The PSR notes that "the Psychological Report indicated that the defendant reported that she experienced suicidal ideation without a plan in 2004 after the death of her fiancé and a miscarriage." (PSR, ¶62.) However, in her interview with the probation officer, she reported only two significant relationships, one from November 2016 to April 2017 and one from October 2012 to July 2014. Similarly, according to the PSR, the psychological report states that the defendant obtained a Bachelor's degree from Regis College, while she reported to the probation officer (and states in her sentencing memorandum) that she does not have a college degree. While these

---

unsupported. The Government nonetheless offers the Aberrant Behavior guideline and cases interpreting it as persuasive authority.

6

inconsistencies may be minor in themselves, they are nonetheless troubling, whether they come from the defendant or the author of the report.

Finally, the loss amount in the PSR does not overstate the seriousness of the offense by including "personal loans" from Mulcahy in the loss amount, as well as monies solicited for fraudulent investments, because the entire $246,250 that Mulcahy gave to the defendant went to the fraudulent investment scheme. Some written contracts between Mulcahy and the defendant refer to that transaction as a "personal loan," while others use the term "investment." Nonetheless, Mulcahy intended all payments as investments, in response to the defendant's solicitations that he would receive a guaranteed, significant return on his money. On all thirty-five checks he gave the defendant, he noted in the memo line, "investment," "invest," "invest #2," "deal," or, in one case, "70%," and all his payments were induced by the same fraud. Moreover, the First Circuit has emphasized that whether an investment contract exists requires looking at "the economic realities of the transaction," rather relying on form or nomenclature used by the parties. *SEC v. SG Ltd.*, 265 F.3d 42, 46-48 (1st Cir. 2001). The defendant's reference to "personal loan" in some of the contracts (which she wrote) does not transform the fundamental nature of the transaction, which was an investment. Therefore, the calculation of loss in the PSR is correct, and does not overstate the seriousness of the offense.

## IV.    Conclusion

For the above reasons, the Government recommends a sentence at the bottom of the guideline range as properly calculated in the PSR, or 41 months' incarceration. Such a sentence is reasonable, appropriate and not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | SCOTT W. MURRAY<br>United States Attorney |
| Dated: August 2, 2019 |  |
|  | By: /s/Anna Dronzek<br>Anna Dronzek<br>John S. Davis<br>Assistant United States Attorneys<br>53 Pleasant Street, 4th Floor<br>Concord, NH  03301<br>(603) 225-1552<br>anna.dronzek@usdoj.gov<br>john.davis8@usdoj.gov |